~~SECRET~~

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Filed with Classified
Information Security Officer

CISO _CMU K_

Date _5 JUNE 2013_

| | |
|---|---|
| DJAMEL AMEZIANE, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 05-cv-392 (ESH) |
| BARACK H. OBAMA, *et al.*, | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

Now before the Court is respondents' motion to deem protected information highlighted in the proposed public factual return for ISN 310 and petitioner's cross-motion to compel compliance with the protective order. Upon consideration of respondents' motion (May 9, 2012 [ECF No. 285] ("Mot.")), petitioner's opposition and cross-motion (June 15, 2012 [ECF No. 289] ("Opp'n")), respondents' reply and opposition (Sept. 14, 2012 [ECF No. 294] ("Reply")), petitioner's reply (Sept. 21, 2012 [ECF No. 295] ("Cross-Motion Reply")), and petitioner's notice of supplemental authority (Apr. 17, 2013 [ECF No. 299] ("Supp.")), the Court will grant in part and deny in part both motions.

I.    BACKGROUND

The Protective Order governing the Guantanamo Bay habeas corpus cases provides that the government must prepare redacted versions of all pleadings "appropriate for filing on the public record." (Protective Order, No. 08-mc-442 (D.D.C. Sept. 11, 2008) [ECF No. 409] ¶¶ 47(a), 48(a), 49(a).) In addition to classified information, the government may withhold from public disclosure information that is unclassified but nevertheless "protected," subject to the approval of the Court. (Protective Order ¶ 34.)

1

~~SECRET~~

A.  **Respondents' Motion to Deem Protected Information**

The relevant law governing the standard for "protected" information was reviewed in great detail in Judge Hogan's May 12, 2011 Opinion, *In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d 5, 9-13 (D.D.C. 2011), so this Court will only briefly summarize it here to provide the necessary background for deciding the instant motions.

Because the public ordinarily has the right to inspect and copy judicial records, the government must provide a valid basis for withholding non-classified information. *Bismullah v. Gates*, 501 F.3d 178, 188 (D.C. Cir. 2007), *vacated on other grounds*, *Gates v. Bismullah*, 554 U.S. 913 (2008). Such a basis requires, "at a minimum, a 'specific,' 'tailored,' rationale for protecting a general category of information, and a precise designation of each particular item of information that purportedly 'falls within the categor[y] . . . described.'" *Ameziane v. Obama*, 620 F.3d 1, 6 (D.C. Cir. 2010) (quoting *Parhat v. Gates*, 532 F.3d 834, 853 (D.C. Cir. 2008)). This has been framed as a two-part test: "the government first must demonstrate *what kind* of information requires protection and *why*, and then must show exactly *what* information in the case at hand it seeks to protect." *Id.*

On November 6, 2008, Judge Hogan ordered the government to file unclassified versions of the factual returns in each of the Guantanamo Bay habeas cases. (Case Management Order, No. 08-mc-442 (D.D.C. Nov. 6, 2008) [ECF No. 940] ¶ I.C.) The government initially attempted to designate all of the unclassified factual returns as "protected" under the Protective Order, but the Court denied that request. Instead, Judge Hogan required that the parties first meet and confer regarding the government's proposed redactions, and if an agreement could not be reached, "the government must file with the appropriate Merits Judge a motion to designate as

~~SECRET~~

protected each highlighted portion of the return." (Memorandum Opinion, No. 08-mc-442 (D.D.C. June 1, 2009) [ECF No. 1780] at 10.)

On July 29, 2009, the government filed unclassified factual returns in over 150 cases, including this case, in which it redacted not only classified but also protected information. (*See* Reply at 4.) Judge Hogan later ruled that in so doing they had violated his June 1, 2009 Order, and gave them until April 14, 2010 to come into compliance. (Order, No. 08-mc-442 (D.D.C. Jan. 14, 2010) [ECF No. 1896].)

On that date, respondents filed a motion seeking a ruling that information falling within six discrete categories could be designated as "protected information" under the Protective Order. (*See* Motion to Amend and for Clarification of the Court's January 14, 2010 Order Regarding Public Returns, No. 08-mc-442 (D.D.C. Apr. 14, 2010) [ECF No. 1942].)[1] Judge

---

[1] The six categories were:

1. Names and/or other information that would tend to identify certain U.S. government employees, FBI Joint Terrorism Task Force members, or contractors—specifically, law enforcement officers, agents, translators, intelligence analysts, or interrogators, all below the Senior Executive Service or General Officer level—[or] the family members of detainees.
2. Information that would reveal the existence, focus, or scope of law enforcement or intelligence operations, including the sources, witnesses, or methods used and the identity of persons of interest.
3. Information indicating the names or locations, including geo-coordinates, of locations of interest as they pertain to counter-terrorism intelligence gathering, law enforcement, or military operations, where the Government has not previously acknowledged publically its knowledge of those names or locations.
4. Information that would reveal the Government's knowledge of telephone numbers, websites, passwords, passcodes, and e-mail addresses used by known or suspected terrorists, or discussions of the manner in which known or suspected terrorists use these methods for communications with one another.
5. Information regarding the use, effectiveness, or details regarding the implementation of certain interrogation approaches and techniques approved by Executive Order 13491 and described in the Army Field Manual No. 2-22.3.

3

~~SECRET~~

~~SECRET~~

Hogan agreed that the government had sufficiently demonstrated the need to protect the type of information contained in each of the six categories and thus had satisfied Step One of the *Parhat/Ameziane* test. *In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d at 25 ("[T]he government has satisfied the first step of *Parhat* by demonstrating, with respect to each proffered category, what kind of information requires protection and why."). However, he noted that "the question of whether information the respondents actually designate for protection satisfies step two of *Parhat* will have to be determined by the merits judges presiding over the cases in which the government has or will file a proposed public factual return that contains such designated information." *Id.* at 26.

On June 25, 2010, respondents served petitioner's counsel with a copy of their proposed public factual return, in which they indicated the information that they sought to deem protected. (Reply at 6.) After a meet-and-confer process in which respondents made some changes to address petitioner's concerns, respondents filed their proposed factual return with this Court on May 9, 2012. (Mot. Ex. 3.) In their motion, respondents claimed that "[t]he six categories that have been approved by Judge Hogan cover all of the information highlighted within the factual return for ISN 310 that Respondents seek to deem protected" with one exception; the government also seeks to protect the category consisting of "detainee health-related information." (Mot. at 4-5.) Petitioner has objected to several of the government's proposed redactions. (Opp'n at 3-11.)

---

6. Certain administrative data, operational 'nicknames,' code words, dates of acquisition, including dates of interrogations, and FBI case names and file numbers, contained in the intelligence documents included in the factual returns.

*In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d at 8.

4

~~SECRET~~

~~SECRET~~

B. **Petitioner's Motion to Compel Compliance with Protective Order**

As mentioned above, the Protective Order requires that when petitioner files a document that may contain classified or protected information, the government must prepare a redacted version of the document "appropriate for filing on the public record." (Protective Order ¶¶ 47(a), 49(a).) This classification review must be done "[a]s soon as practicable following the original filing date." (*Id.* ¶ 49(a).)

In order to deal with the large number of filings in need of such a classification review, the government instituted a "prioritized review process" in August 2011. (*See* Reply at 29.) As part of that process, respondents contacted counsel for all petitioners in the Guantanamo habeas cases, and requested that they submit a prioritized list of filings that they wanted to have reviewed. (*See id.*) The government then proposed to review all of the first-listed filings in the order they were received before moving on to any of the second-listed filings. (*See id.*) Although fifty-four petitioners had submitted priority lists as of the date of respondents' Reply, petitioner was not one of them. (*See id.*) Petitioner admits that he has not participated in the government's priority review process, arguing that he requested review of several filings in April 2011, before any such procedure was instituted, and does not want his request to move to the back of a very slow-moving line. (*See* Opp'n at 15-17.) Indeed, respondents acknowledged that as of September 14, 2012, the date of respondents' Reply, the classification review team had finalized only nineteen case filings through the priority review process. (Reply at 29.)

Petitioner now seeks an Order from this Court compelling the government to produce public versions of three of his pleadings in this case: his preliminary traverse and motion for summary judgment, filed on February 14, 2009; his reply memorandum, filed on March 3, 2009; and his closing memorandum, filed on April 2, 2009. ([ECF Nos. 165, 174, 193].) Petitioner

5

~~SECRET~~

requests an order that production be made within 30 days, or, at a minimum, concurrently with the public factual return, so that the public can evaluate both the government's and petitioner's versions of the underlying facts at the same time. (*See* Opp'n at 1-2, 12.) He further requests that the Court order the government to process his requests for declassification of certain materials in his factual return and in various hearing transcripts. (*See* Opp'n at 13.)

## II. ANALYSIS

### A. Motion to Deem Protected Information

Petitioner initially raised eight objections to respondents' proposed public factual returns. However, several of those grounds are now moot or need not be addressed. For example, petitioner's first objection serves solely to "preserve the record of [petitioner's] objections" to the six categories of protected information approved by Judge Hogan in his May 12, 2011 Order. (*See* Opp'n at 3; Reply at 9 n.1.) The Court will not revisit Judge Hogan's well-reasoned opinion, and therefore it declines petitioner's request for reconsideration of that opinion. Additionally, respondents have agreed to lift the redactions addressed by petitioner's objections 2, 4, and 5, thereby rendering those objections moot. (*See* Reply at 9-10.) And finally, in petitioner's eighth objection, he complains that because he opposes certain of the proposed designations, "the government is obligated to file a memorandum justifying each designation," but "has not done so." (Opp'n at 10.) However, in their Reply, respondents have done that; they have addressed each of petitioner's objections and justified their requested designation for each disputed piece of information. Thus, petitioner's request that the government "be required to file a proper memorandum explaining its designations" is now moot.

The Court also notes that petitioner did not object to the government's redaction of certain medical information that does not fall into any of the six pre-approved categories of

information, and thus, the Court will deem that information protected. *See Barre v. Obama*, 2013 WL 1180300, at *3 & n.4 (D.D.C. Mar. 8, 2013) (deeming certain medical information protected because the government's request to do so was unopposed).

The Court will now address the remaining objections:

1. **Objection 3**

Petitioner's objection 3 challenges the redaction of names such as ▮ "Mustafa," ▮ "Mohammed," and "Hassan," which petitioner claims are "facially so generic as not to warrant any redactions." (*See* Opp'n at 4.) Respondents have agreed to lift the redactions on the names "Mohammed" and "Hassan," so those objections are now moot. (*See* Reply at 13.) However, with respect to ▮ and ▮ respondents insist that, although the names themselves may be generic, the surrounding contextual information makes those individuals "readily identifiable" as petitioner's former roommate and co-worker, respectively, and so redaction is necessary to protect their safety and well-being. (*Id.*) Respondents offer no response with respect to the name "Mustafa." (*See id.*)

The Court notes that, despite respondents' assertion that all of the highlighted information in the proposed factual return falls within the six categories of information approved by Judge Hogan, that does not appear to be true with respect to the names ▮ and ▮ Certainly, the government does not point to any one of those categories as justifying the redaction of this information. Thus, the Court must undertake the two-step *Parhat* analysis to determine whether this information is properly deemed "protected."[2]

---

[2] The only one of the six categories that could even plausibly relate to this type of information is Category 2: "Information that would reveal the existence, focus, or scope of law enforcement or intelligence operations, including the sources, witnesses, or methods used and the identity of persons of interest." *In re Guantanamo Bay Detainee Litig.*, 787 F. Supp. 2d at 8. However, "during step two of the *Parhat* analysis the determination of whether designated information

7

~~SECRET~~

With respect to *Parhat* Step One, the Court must first determine whether there is a sufficient rationale for protecting this *type* of information. The government effectively seeks to protect a category of information consisting of the names of "first-person contacts," or "those individuals who the FBI has reason to believe have been in direct contact with the subject of an FBI investigation." (*See* Reply Ex. 13, First Abbate Declaration ("Abbate Decl.") ¶ 5.) The government's rationale for protecting that information is that "revealing innocent individuals' associations with suspected terrorists can impose a severe stigma on these individuals, and expose them to social and economic discrimination, harassment or retaliation, physical harm, and/or unwanted scrutiny by the general public and media." (*Id.* at 13-14, citing Ex. 13, Abbate Decl. ¶ 5.) Cognizant that "[i]t is not within the role of the courts to second-guess executive judgments made in furtherance of that branch's proper role," *Ameziane*, 620 F.3d at 5, the Court concludes that this category satisfies *Parhat*'s Step One requirement.

With respect to the second step of the *Parhat* analysis, the Court concludes that this requirement is met as well. First, respondents clearly explained how the information surrounding these names would make them identifiable. (*See* Reply Ex. 13, Abbate Decl. ¶ 4.) Second, the government asserted that these particular individuals are currently unaware that the FBI has information about them, and so they "have no opportunity to consent or object to its

---

falls within a protected category requires evaluating whether the rationale for protection asserted in step one is implicated by the information." *Id.* at 17. Here, the government's rationale for protecting the information in Category 2 was that it "could provide current or potential subjects of investigation, including international terrorists and terrorist organizations, with significant insight into the U.S. Government's counterterrorism and law enforcement efforts, enabling persons suspected of terrorism-related activities to avoid detection and evade prosecution, dramatically reducing the effectiveness of current and future . . . efforts, and thereby compromising national security and law enforcement missions." *Id.* at 18 (internal quotation marks omitted). Respondents here do not claim that release of the names ▓▓▓ and ▓▓▓ would reduce the effectiveness of security and law enforcement efforts. (*See* Reply Ex. 13, First Abbate Declaration.) Thus, even if these names fall within Category 2, the *Parhat* Step Two analysis would not justify their redaction on that ground.

8

~~SECRET~~

public release." (*See id.* ¶ 5.) This fact also suggests that it has not previously been publicly-acknowledged that these individuals were associated with petitioner. Finally, the government has explained how an individual being connected to a suspected terrorist can raise serious concerns for the safety and well-being of that individual. (*See id.*) Thus, the Court concludes that the government has met its burden of demonstrating why the names █████ and ███ are "not suitable for public filing" and should therefore be designated "protected information" under the Protective Order and redacted from the public versions of petitioner's factual return. (*See* Protective Order ¶¶ 10, 34, 49(a).)

With respect to the name "Mustafa," however, the Court cannot reach the same conclusion. The government has offered no response whatsoever to petitioner's challenge to the redaction of that name. In fact, in response to petitioner's objection 2, which also challenges redaction of the name "Mustafa," the government claims that it is willing to lift the redactions on that name. (Reply at 9-10.) Nevertheless, it continues to redact the word "Mustafa" in the amended factual return attached to its Reply. (*See, e.g.*, Reply Ex. 3, Amended Factual Return ¶ 29, ISN 310 FD-302 (April 1, 2002).) In the absence of any showing of exactly *why* this particular name requires protection, the Court concludes that respondents must lift the redactions on the name "Mustafa" from the amended factual return.

### 2.   Objection 7

Petitioner's only remaining substantive objection is his challenge to the government's redaction of certain words and phrases that were unredacted in the 2009 public factual return and therefore are "currently available in the public domain and officially acknowledged by the government." (Opp'n at 8-9.) Respondents have agreed to lift the redactions on four of the five challenged pieces of information. (Reply at 11.) Thus, the only proposed redaction still at issue

~~SECRET~~

is the word "Algerian" in an excerpt from the factual return for ISN 533. (Opp'n at 8-9; Reply at 11-12.) Respondents have redacted this word from the proposed factual return not because it is "protected," but because it is confidential and was only disclosed in the 2009 factual return inadvertently. (Reply at 12.) They insist that "inadvertent disclosures of national security information do not constitute official acknowledgment so as to justify compelling still further disclosures that could compound the risk to national security." (*Id.*)

Chief Judge Lamberth of this Court recently considered—and rejected—this exact argument in *Barre v. Obama*, 2013 WL 1180300, at *2-4 (D.D.C. Mar. 8, 2013). There, the Court determined that the disclosure of classified information in a 2009 public factual return did constitute an "official acknowledgement" of that information. *Id.* at *2 (citing *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990)). The Court then considered whether the government should nevertheless be permitted to redact that information based on its argument that the earlier disclosure had been "inadvertent." It denied that request based on several factors, all of which are equally applicable here. First, this case differs from *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007), the case on which respondents rely, because the disclosure here was "not made under seal to the opposing party but, instead, [was] publicly released and placed on the Court's docket, where [it] remain[s]." *Barre*, 2013 WL 1180300, at *3. Second, "the government has made no attempt to remove and replace the 2009 factual return currently available to the public" despite the fact that the Protective Order provides a mechanism for removing inadvertently-disclosed classified information. *Id.*

Finally, respondents cannot simply fall back on an argument that the word "Algerian" should be redacted as "protected" because, like the respondents in *Barre*, they have "failed to argue why the instant information falls into one of the six categories of information Judge Hogan

10

~~SECRET~~

~~SECRET~~

designated as protected." *Id.* Although the government did claim that "all of the highlighted information" in the proposed factual return is covered by those six categories, it has not specified the category that the reference to "Algerian" interrogators would fall into. While this information could arguably be considered part of Category 2, no explanation has been offered as to whether the rationale for protecting Category 2 information is implicated here, and secondly, this information has previously been publicly disclosed and officially acknowledged. Therefore, the Court will deny respondents' request to deem this information "protected."

### 3.     Objection 6

Petitioner's sixth objection does not relate to the government's refusal to disclose certain information to the public, but rather its refusal to disclose information to petitioner. (*See* Opp'n at 6-8 ("there is no basis to designate much of the information as unsuitable for release to Ameziane").) Specifically, petitioner complains that the government affixed the heading "NOT Releasable to Detainee or Public" to every page of the proposed factual return despite the fact that much of the protected information has already been disclosed to Ameziane in other contexts. (*Id.* at 6-7.) Petitioner further requests that his counsel be permitted to use his family members' names and information on his behalf with their authorization. (*Id.* at 7.)

The government argues that petitioner's complaint is meritless precisely because much of the protected information "has been made available to Petitioner himself in detainee-eyes-only versions of certain documents." (Reply at 17.) Furthermore, the government points out that the Protective Order expressly precludes a petitioner's counsel from disclosing protected information to any other person—including the petitioner or his family—without authorization from the government or the Court. (*Id.* (citing Protective Order ¶¶ 35, 39).) Thus, respondents assert that if petitioner seeks access to other specific pieces of protected information, "his counsel may

11

~~SECRET~~

request permission from the Government to share that information with him, and failing such authorization, may seek leave from the Court." (*Id.*)

To the extent that protected information has already been disclosed to petitioner, the Court agrees that it should not now be withheld from him. Any pages of the factual return that contain only unclassified or previously-disclosed protected information should therefore be made available to petitioner. However, the Court agrees with the government that it cannot grant petitioner "unfettered access to all of the protected information in the return." (*Id.*) Nor can the Court authorize petitioner's counsel to disclose protected information to petitioner's family members based on the record before it. Without knowing exactly what information petitioner is referring to and to what use he intends to put that information, the Court cannot evaluate his request for release of that information and must deny this request without prejudice.

### B. Motion to Compel Compliance with Protective Order

#### 1. Public Versions of Petitioner's Summary Judgment Filings

Petitioner has filed a cross-motion to compel respondents to produce public versions of three of his summary judgment filings consistent with their obligations under the Protective Order. (*See* Opp'n at 12-17.) Petitioner seeks to have these documents released within 30 days, or, at a minimum, simultaneously with release of the public factual return. (*Id.* at 12.) This is necessary, he contends, "to ensure that the public is afforded an accurate and balanced understanding of Ameziane's habeas case." (*Id.* at 14.)

Repeating the same arguments that it unsuccessfully made to Chief Judge Lamberth, the government again relies on the complexity of the classification review process and the numerous burdens placed on its review teams. (*See* Reply at 19-27.) In *Barre*, Chief Judge Lamberth addressed these same logistical problems but nonetheless ordered the government to produce the

12

~~SECRET~~

~~SECRET~~

public versions of the petitioner's factual returns within 90 days. 2013 WL 1180300, at *4-6. This Court will follow Chief Judge Lamberth's lead.

First, the Protective Order mandates that the government release public versions of *all* classified or protected filings. (Protective Order ¶¶ 47-49.) Permitting the government to delay review of these filings indefinitely "would not only violate the Protective Order, it would provide a backdoor for the Government to effectively 'seal a judicial record that the public has the right to inspect and copy,' which is exclusively the prerogative of the Court." *Barre*, 2013 WL 1180300, at *5 (quoting *Bismullah*, 501 F.3d at 188).

Second, the fact that petitioner has refused to participate in the prioritized review process does not defeat his claim. As Chief Judge Lamberth noted, that process "is not a mandatory feature of the Protective Order's public release regime; rather the Protective Order makes plain that declassification of filings in habeas cases is automatic." *Id.* at *5. Thus, "petitioners certainly are not required to participate in the process." *Id.* And indeed, like the petitioner in *Barre*, petitioner here put the government on notice of his request by seeking review of these documents well before the expedited process was put into place.

Third, this Court "is [also] troubled by the government's apparent lack of urgency in issuing public versions of classified materials filed in Guantanamo proceedings." *Id.* at *6. The delay here is even greater than in *Barre*; the filings that petitioner now requests to have reviewed were filed on February 14, March 3, and April 2, 2009. The government has offered no explanation whatsoever for why it has taken over four years to review these particular documents. Instead, respondents offer boilerplate assertions that Guantanamo petitioners' filings are often "thinly sourced" and cite to extensive "exogenous material" (Reply at 21-22), with no suggestion that such arguments apply to the filings here. Indeed, the government's only

13

~~SECRET~~

argument specific to this case is that because petitioner's habeas case has been stayed, there is no urgent need to produce these documents. (Reply at 34.) The government attempted to rely on a similar argument in *Barre*, where it pointed out that the petitioner's habeas petition had already been dismissed and he had been released from Guantanamo Bay. 2013 WL 1180300, at *6. As Chief Judge Lamberth noted, however, "this ignores the inherent public interest in Guantanamo litigation," and the longstanding practice of publicly disclosing court documents so as to allow citizens "'to keep a watchful eye on the workings of public agencies.'" *Id.* (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)).

The government should not be able to effectively keep petitioner's judicial records under seal any longer than it has already done. However, cognizant of the fact that review of these documents does take time and that the government has many competing demands for its resources, this Court will follow Chief Judge Lamberth's lead and allow the government 90 days (rather than the 30 days requested by petitioner) to produce public versions of these documents, along with petitioner's factual return.

### 2. Declassification Review of Other Documents

Petitioner also asks the Court to order respondents to conduct a declassification review of several specific documents. (Opp'n at 13.) These include a specific sentence in the Narrative portion of his factual return and three excerpts from classified hearing transcripts. (*See id.*)

With respect to the footnote in the Narrative, because the Narrative is part of petitioner's factual return, the Court has already ordered the government to conduct a thorough review of that document and to release a public version of it within 90 days. (*See supra* Section II.B.1.) However, the Court is not aware of, nor has petitioner cited, any authority permitting the Court to review the Executive Branch's classification decisions in this context. Indeed, "the Executive

~~SECRET~~

Branch has 'authority to classify and control access to information bearing on national security.'" *See Doe v. Doe Agency*, 608 F. Supp. 2d 68, 71 n.3 (D.D.C. 2009) (citing *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988)). Thus, although the Court has ordered the government to review the factual return and prepare a redacted version of it consistent with the Protective Order, the Court will not order the government to publicly disclose the contents of footnote 4 if it still believes that information to be classified.

With respect to the hearing transcripts, the government insists that review of hearing transcripts "is not required under the Protective Order, which provides for classification review and release only of the parties' filings." (Reply at 2.) The government is correct; the Protective Order provides that the government must release public versions of any pleading or other documents "*filed by*" petitioners or respondents. (Protective Order ¶¶ 47, 48, 49.) The Protective Order does not provide a similar procedure for documents that are created during the litigation but not filed by either party, such as hearing transcripts or court orders and opinions.

However, requiring the government to produce redacted versions of those documents is consistent with the well-established principle that the press and the public have "a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." *Wash. Post Co. v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991). The Court is not persuaded that the government's explanation of the burdens on its classification review team are sufficiently "compelling" to justify denying petitioner—and the public—access to these key parts of the factual record in this case. The mere fact that they were verbal—rather than written—proceedings does not make them any less significant. Furthermore, the Court is not concerned about the "burdensome" nature of this request because the excerpts petitioner seeks to have publicly disclosed appear to consist of only 9 pages. (*See*

~~SECRET~~

Opp'n at 13 & n.13.) However, as with the summary judgment pleadings and the factual return, the Court cannot order the government to de-classify the particular hearing transcript excerpts in question; all the Court can do is order the government to conduct a classification review of those documents and release any unclassified and unprotected portions of the documents to the public.

## CONCLUSION

For the foregoing reasons, the government's motion to deem protected information is granted in part and denied in part, and petitioner's motion to compel compliance with the protective order is granted in part and denied in part. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: June 5, 2013

~~SECRET~~

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Filed with Classified
Information Security Officer

CISO _____

Date  5 JUNE 2013

DJAMEL AMEZIANE,            )
                            )
        Petitioner,         )
                            )
   v.                       )   Civil Action No. 05-cv-392 (ESH)
                            )
BARACK H. OBAMA, et al.,    )
                            )
        Respondents.        )
_____)

## ORDER

Upon consideration of respondents' motion to deem protected information (May 9, 2012 [ECF No. 285]), petitioner's opposition and cross-motion to compel compliance with the Protective Order (June 15, 2012 [ECF No. 289]), respondents' reply and opposition (Sept. 14, 2012 [ECF No. 294]), petitioner's reply (Sept. 21, 2012 [ECF No. 295]), and petitioner's notice of supplemental authority (Apr. 17, 2013 [ECF No. 299]), and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that highlighted information contained in the proposed public factual return for ISN 310 will be protected, with the following exceptions:

(1) the word "Algerian" as it appears in ISN 533 FD-302 (May 4, 2002) may not be redacted; and

(2) the name "Mustafa" as it appears in ISN 310 Narrative ¶¶ 29, 32, 35, and ISN 310 FD-302 (April 1, 2002) may not be redacted. It is further

**ORDERED** that petitioner shall have access to any pages of the proposed public factual return for which the only protected information has previously been disclosed to him. It is further

1

~~SECRET~~

**ORDERED** that petitioner's family members shall not have access to the protected information contained in the proposed public factual return. It is further

**ORDERED** that the government will have ninety days to produce public copies of the following documents:

(1) petitioner's preliminary traverse and motion for summary judgment [ECF No. 165];

(2) petitioner's reply memorandum [ECF No. 174];

(3) petitioner's closing memorandum [ECF No. 193];

(4) pages 16-17 of the transcript from the February 24, 2009 hearing;

(5) page 4 of the transcript from the March 5, 2009 hearing; and

(6) pages 4-7 and 19-20 of the transcript from the April 29, 2009 hearing.

**SO ORDERED.**

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: June 5, 2013