**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**DJAMEL AMEZIANE,**                     )
                                        )
             **Petitioner,**             )
                                        )
        **v.**                           )    **Civil Action No. 05-392 (ESH)**
                                        )
**BARACK OBAMA,** *et al.*,              )
                                        )
             **Respondents.**            )
_____)

## <u>MEMORANDUM OPINION</u>

On December 5, 2013, respondents filed a Notice of Transfer of Petitioner Djamel

Ameziane [Dkt. No. 345] stating that the United States had relinquished custody of petitioner

and transferred him to control of the Algerian government.  Before the Court is petitioner's

motion for habeas relief in the form of an order requiring the government to return petitioner's

personal property ("Pet'r Mot.," March 7, 2014 [Dkt. No. 351]), and respondents' cross-motion

to dismiss the entire case as moot ("Mot. to Dismiss," April 11, 2014 [Dkt. No. 358]).  For the

reasons stated below, the Court will deny petitioner's motion, grant respondents' motion, and

dismiss the case as moot.

## BACKGROUND

Upon his repatriation to Algeria, the U.S. Department of Defense ("DOD") returned to

petitioner all of the personal property he had at the time of his capture or later acquired at the

Guantanamo Bay detention camp, with the exception of 740 British pounds, 429,000 Afghanis,

and 2300 Pakistani rupees seized from petitioner at the time of his capture.  (Decl. of Jay Alan

Liotta, Apr. 11, 2014 [Dkt. No. 358-1] ¶ 8; Pet'r Mot. at 8 n.8.)  DOD policy is to return to

repatriated detainees all of their personal property with the exception of contraband, "potential law enforcement evidence," and "all money that was on a detainee's person at the time of his capture." (Liotta Decl. ¶¶ 9-11.)  The DOD justifies its policy to retain all money associated with detainees "based on a strong national security interest in preventing these funds from being used in a manner that would adversely impact the safety and security of the United States"—*i.e.*, to finance terrorist activities.  (*Id.* ¶ 11.)  This policy applies irrespective of a detainee's status or whether he received habeas relief.  (*Id.* ¶ 12.)  Petitioner seeks in his instant motion for habeas relief an order requiring the government to return his money.  (Pet'r Mot. at 1.)  Respondents argue that the Court lacks jurisdiction to grant the relief petitioner requests and that the case in its entirety is now moot.  (Mot. to Dismiss at 15.)

## ANALYSIS

Because it is undisputed that petitioner is no longer "in custody" for purposes of habeas jurisdiction under 28 U.S.C. § 2241, petitioner bears the burden of demonstrating some collateral consequence of his prior detention to defend his petition against the government's claim of mootness.  *Gul v. Obama*, 652 F.3d 12, 17 (D.C. Cir. 2011); *In re Petitioners Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 127 (D.D.C. 2010), *aff'd sub nom Chaman v. Obama*, 2012 WL 3797596 (D.C. Cir. Aug. 10, 2012).[1] Respondents do not seem to question the concreteness of petitioner's alleged injury—the loss of his money—or the fact that his detention at Guantanamo caused the injury.  Instead, respondents argue that the injury is unredressable through habeas relief and that petitioner's entire case is moot.  (Mot. to Dismiss at 15.)  The Court agrees.  First, pursuant to 28 U.S.C. § 2241(e)(2), the Court is without jurisdiction to consider claims for the recovery of petitioner's money.  Second,

---

[1] The Court assumes, without deciding, that the collateral consequences doctrine applies to a habeas petition filed by a Guantanamo detainee.  *See Gul*, 652 F.3d at 16.

petitioner has failed to demonstrate that his injury is otherwise susceptible to judicial correction through traditional habeas relief.  Third, because petitioner fails to demonstrate any collateral consequence of his prior detention that is susceptible to judicial correction, his case is moot.

## I.     THE COURT LACKS JURISDICTION TO CONSIDER PETITIONER'S CLAIMS FOR RECOVERY OF MONEY

Under 28 U.S.C. § 2241(e)(2), the Court lacks jurisdiction to consider any "action other than habeas corpus," *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 319 (D.C. Cir. 2012), brought "against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States . . . ." 28 U.S.C.A. § 2241(e)(2).  To determine whether section 2241(e)(2) applies, the Court "ask[s] simply whether a challenge such as that advanced by petitioner[] constitutes 'a proper claim for habeas relief' if brought by an individual in custody in Guantanamo or elsewhere."  *Aamer v. Obama*, 742 F.3d 1023, 1031 (D.C. Cir. 2014) (quoting *Kiyemba v. Obama*, 561 F.3d 509, 513 (D.C. Cir. 2009)).  A legal challenge to the government's confiscation and continued possession of petitioner's personal property is not a "proper claim for habeas relief."   While a "habeas petition is a vehicle capable of challenging the basis of a governmental restriction on a person's liberty," it is "is not capable of addressing private property rights."  *Prentice v. State of Michigan Court of Appeals*, 2009 WL 1956274, *1 (D.D.C. July 2, 2009); *see also In re Hill*, 2005 WL 613262, *1 (D.C. Cir. Mar. 14, 2005) (unpublished *per curiam* order referring to a request for return of property as "non-habeas relief").  Countless decisions from other jurisdictions have similarly held that claims for the return of lost, damaged, or confiscated property—including money—are not cognizable in a writ of habeas corpus.  *See, e.g.*, *Weaver v. Sanders*, 2013 WL 2147806, *2 (C.D. Cal. May 16, 2013); *Nance v. Heley*, 2012 WL 2953740, *2 (E.D.N.Y. July 19, 2012); *Buchanan v. Johnson*, 723 F. Supp. 2d 722, 727 (D. Del. 2010); *Hall v. Norris*, 2010

WL 5071201, *1 (W.D. Ark. Dec. 9, 2010); *Olajide v. U.S. Bureau of Immigration and Customs Enforcement*, 402 F. Supp. 2d 688, 695 (E.D. Va. 2005); *Bowen v. United States*, 2005 WL 1676668, *2 (M.D. Ga. June 29, 2005).

Likewise, petitioner's attempt to shoehorn his plea for the return of his money into a viable habeas claim through citations to the Hague and Geneva Conventions and Army Regulation 190-8 is futile.  "Congress has provided explicitly that the [Geneva] Convention's provisions are not privately enforceable in habeas proceedings." *Al-Adahi v. Obama*, 613 F.3d 1102, 1111 n.6 (D.C. Cir. 2010) (citing Military Commissions Act of 2006 § 5, Pub. L. No. 109-366, 120 Stat. 2631-32).  And while a detainee may invoke Army Regulation 190-8 in a habeas proceeding, he may only do so "to the extent that the regulation explicitly establishes [his] entitlement to release from custody." *Al Warafi v. Obama*, 716 F.3d 627, 629 (D.C. Cir. 2013). The provisions of Army Regulation 190-8 on which petitioner relies concern only the return of personal property.  *See* Army Reg. 190-8 § 3-14(d) ("All confiscated personal property that can be released, will accompany the released or repatriated [enemy prisoner of war]/[retained personnel]"); *id.* § 6-16(b) ("Upon release, the [civilian internee] will be given all articles, monies, or other valuables impounded during internment. . . .").  These provisions are simply irrelevant to petitioner's "release from custody" or the legality of his prior detention.  *See Al Warafi*, 716 F.3d a 629.  In any event, Army Regulation 190-8 explicitly provides, in accord with Article 68 of Geneva Convention III, a dispute resolution procedure concerning the return of seized personal property that is *distinct from habeas relief*:  claims for "compensation for personal effects, money, or valuables . . . impounded by the United States and not returned upon repatriation . . . will be referred to the country to which the [detainee] owes allegiance." *Id.* § 6-3(b)(2).  The Court's habeas powers, though undoubtedly "adaptable," *Boumediene v. Bush*, 553

U.S. 723, 779 (2008), cannot with such little foundation be expanded to reach such traditionally

non-habeas claims.  Therefore, pursuant to 28 U.S.C. § 2241(e)(2), this Court lacks jurisdiction

to adjudicate any claim relating to the return of petitioner's money.  *See Al-Zahrani*, 669 F.3d at

319 (dismissing, as barred under section 2241(e)(2), a case that "constitute[d] an action other

than habeas corpus").

    Petitioner's argument that section 2241(e)(2) "is unconstitutional and therefore void"

because it strips this Court of jurisdiction over petitioner's claims for the return of his property

(Pet'r Reply Br., May 9, 2014 [Dkt. No. 361] at 3; *id.* at 19-28), is foreclosed by Circuit

precedent.  *Al-Zahrani*, 669 F.3d at 319 (reaffirming the continued validity of section §

2241(e)(2) after *Boumediene*, 553 U.S. at 787-92); *see also Al Janko v. Gates*, 741 F.3d 136, 145

(D.C. Cir. 2014) (concluding that application of section 2241(e)(2) is constitutional even though

it deprives petitioner of a damages remedy for violations of his constitutional rights).  That

section 2241(e)(2) may leave petitioner without a legal remedy does not render the provision

unconstitutional.  As the D.C. Circuit has stated on several occasions, "'[n]ot every violation of a

right yields a remedy, even when the right is constitutional.'" *Al-Zahrani*, 669 F.3d at 320

(quoting *Kiyemba v. Obama*, 555 F.3d 1022, 1027 (D.C. Cir. 2009), *reinstated as amended by

Kiyemba v. Obama*, 605 F.3d 1046 (D.C. Cir. 2010)).  "The Constitution, subject to certain

limitations, leaves exclusively to the Congress questions of fairness, justice, and the soundness of

policy in the allocation of jurisdiction.  '[T]his court simply is not at liberty to displace, or to

improve upon, the jurisdictional choices of Congress.'" *Al Janko*, 741 F.3d at 147 (quoting

*Wagner v. FEC*, 717 F.3d 1007, 1016 (D.C. Cir. 2013) (per curiam) (quotation marks omitted)).[2]

---

[2] Petitioner's arguments that section 2241(e)(2) runs afoul of the due process and equal protection clauses (Pet'r Reply at 24-28) also fail.  Under Circuit precedent, "the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States," including detainees at Guantanamo Bay.  *Kiyemba*, 555 F.3d at 1026 & n.9.  Likewise, "Congress's decision in § 2241(e)(2)

## II.    TRADITIONAL HABEAS RELIEF WOULD NOT REDRESS PETITIONER'S INJURY

Under the collateral consequences doctrine, "[a] former detainee, like an individual challenging his parole, must . . . make an actual showing his prior detention or continued designation burdens him with 'concrete injuries'" that are "susceptible to judicial correction" through habeas relief.  *Gul*, 652 F.3d at 17, 21.  As explained by the D.C. Circuit, "[a]n order granting a detainee's habeas petition would not mean his exoneration, nor would it be a determination he does not pose a threat to American interests; it would mean only that the Government has not proven the detainee more likely than not 'materially support[ed]' or was a 'part of' a force associated with al Qaeda or the Taliban."  *Id.* at 19 (citing Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224 (2001) (reprinted at 50 U.S.C. § 1541 note)).  Petitioner concedes that DOD's policy of retaining money seized upon a detainees capture is premised on his status as a former Guantanamo detainee, and *not* on whether his detention was authorized under the AUMF.  (Pet'r Mot. at 5-6; *see also* Liotta Decl. ¶ 12.)  Thus, a favorable determination on the legality of petitioner's former detention is unlikely to redress the alleged collateral consequence—*i.e.*, cause DOD to return petitioner's money.  *See Gul*, 652 F.3d at 19-20 (favorable decision on the merits of former detainee's petition would not affect petitioner's placement on No Fly List, which was based on status as former Guantanamo detainee).

---

to preclude only alien detainees captured as part of the war on terror from bringing damages actions easily" satisfies the equal protection clause.  *Hamad v. Gates*, 732 F.3d 990, 1005-06 (9th Cir. 2013).  The Court agrees with the Ninth Circuit that section 2241(e)(2)'s distinctions based on alienage are subject to rational basis review and are "neither [an] arbitrary nor irrational" means by which to serve Congress's legitimate foreign policy concerns.  *Hamad*, 732 F.3d at 1006.

### III.     PETITIONER'S CASE IS MOOT

Because petitioner is no longer "in custody" of the United States and has failed to demonstrate any concrete collateral consequence of his detention at Guantanamo that is susceptible to judicial correction under 28 U.S.C. § 2241, his case is moot.  *See Gul*, 652 F.3d at 22.[3]

### CONCLUSION

For the foregoing reasons, the Court will deny plaintiff's motion for habeas relief, grant respondents' motion to dismiss, and dismiss the case as moot.  An Order consistent with this Memorandum Opinion will be issued on this day.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   July 21, 2014

---

[3] In his reply, petitioner suggests that—beyond the DOD's retention of his money—collateral consequences may also include the "stigma associated with prior detention" which "would be mitigated if not eliminated by a court ruling that a detainee's detention was unlawful."  (Pet'r Reply at 14-15 & n.11.)  However, because his label as a former detainee "brings with it neither a 'concrete effect' nor a 'civil disability' susceptible to judicial correction," any such stigma does not save this action from mootness. *Gul*, 652 F.3d at 20-21.